**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA DE LOURDES CASTRO DE
MERCADO,

       *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

       *Respondent.*

No. 06-70361

Agency No.
A98-006-996

ILDEFONSO MERCADO MORAN,

       *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

       *Respondent.*

No. 06-70366

Agency No.
A98-006-997

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 5, 2008—Pasadena, California

Filed August 21, 2008
Amended May 19, 2009

Before: David R. Thompson, Diarmuid F. O'Scannlain, and
Richard C. Tallman, Circuit Judges.

5977

Order;
Dissent to Order by Judge Pregerson;
Opinion by Judge O'Scannlain

## COUNSEL

Joseph Mbacho, El Centro, California, filed briefs on behalf of the petitioners.

Catherine Carroll, Wilmer Cutler Pickering Hale & Dorr, Washington, DC, argued the cause for the petitioners as court-appointed amicus curiae; Jonathan H. Becker, Wilmer Cutler Pickering Hale & Dorr, Washington, DC, filed briefs as court-appointed amicus curiae; John A. Rogovin was on the briefs.

Charles Cantor, Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, argued the cause for the respondent; Luis E. Perea, Attorney, Office of Immigration Litigation, filed a brief; John C. Cunningham, Senior Litigation Counsel, Office of Immigration Litigation, and Peter D. Keisler, Assistant Attorney General, Civil Division, were on the brief.

## ORDER

The opinion filed in this case on August 21, 2008, is amended as follows:

At page 11373 of the slip opinion, line 10, after the sentence concluding < scope of our review > delete < Even if the Mercados could demonstrate that the IJ misunderstood the

support § 1183a requires Mr. Mercado's brother to provide, their claim is simply an argument that the IJ underestimated the hardship their removal would cause. We lack jurisdiction over such question. >

The panel has unanimously voted to deny the petition for rehearing. Judge O'Scannlain and Judge Tallman vote to deny the petition for rehearing en banc and Judge Thompson so recommends.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to hear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED. No further petitions for rehearing or rehearing en banc may be filed.

---

PREGERSON, Circuit Judge, dissenting from the denial of rehearing en banc:

I dissent from our court's denial of an en banc rehearing in this case. The panel opinion ignores a well-settled rule of constitutional avoidance. In the final footnote, the panel gratuitously and unnecessarily addresses a constitutional issue after basing its decision on the plain language of the statute at issue and pre-existing case law. There was absolutely no need for the panel opinion to grapple with a constitutional argument— particularly after expressly setting the constitutional question aside and deciding the case on other grounds.

Under the principle of constitutional avoidance,

> [A court] will not pass upon a constitutional question although properly presented by the record, if there is

also present some other ground upon which the case may be disposed of . . . . [T]hus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.

*Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring); *see also Envt'l Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 843 (9th Cir. 2003) (stating that "we avoid considering constitutionality if an issue may be resolved on narrower grounds[ ]") (citing *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 184 (1999) (stating that "[i]t is . . . an established part of our constitutional jurisprudence that we do not ordinarily reach out to make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground.")); *United States v. Gurolla*, 333 F.3d 944, 953 n.11 (9th Cir. 2003) (declining to express any view on implicated constitutional concerns and noting that the court's ruling avoided the necessity of reaching the constitutional questions); *Anchustegui v. Dep't of Agric.*, 257 F.3d 1124, 1129 (9th Cir. 2001) (explaining that "because we find a statutory violation, it is not necessary to reach the constitutional question presented" and citing *Ashwander*, 297 U.S. at 347 (Brandeis, J., concurring)).

I believe the panel gratuitously, unnecessarily and cursorily addressed a constitutional issue in its final footnote. I dissent.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We are asked to reexamine whether we have jurisdiction to review an Immigration Judge's decision which held that the

removal of two aliens, a husband and wife, would not impose an "exceptional and extremely unusual hardship" on their United States-born children and the husband's elderly parents, both of whom have legal status to reside in the United States.

I

Maria de Lourdes Castro de Mercado and Ildefonso Mercado Moran (the "Mercados") are natives and citizens of Mexico who entered the United States without inspection in 1990 and 1989 respectively. The Mercados are married, have four minor children, and share their home with Mr. Mercado's elderly parents. The Mercados' children are citizens of the United States. Mr. Mercado's parents are lawful permanent residents; their applications were sponsored by Mr. Mercado's brother, a U.S. citizen. The Mercados themselves have never lawfully been admitted to this country.

In 2004, the Department of Homeland Security served Mr. and Mrs. Mercado with Notices to Appear charging them with removability as aliens present in the United States without admission or parol under 8 U.S.C. § 1182(a)(6)(A)(i). The Mercados conceded the charges but applied for cancellation of removal, arguing that their departure from this country would impose an "exceptional and extremely unusual hardship" on their children and on Mr. Mercado's parents. *See id.* § 1229b(b)(1). In 2005, an Immigration Judge ("IJ") held a hearing and denied the Mercados' applications, acknowledging that their removal would impose a hardship on their relatives, but concluding that such hardship did not rise to such an extreme level as to warrant relief. The IJ granted their alternative applications for voluntary departure instead.

The Board of Immigration Appeals ("BIA") affirmed the IJ's decision without opinion, and the Mercados timely filed

petitions for review, arguing that the IJ's decision was predicated on a legal error and violated their constitutional rights.[1]

## II

**[1]** Before we reach the merits of the Mercados' claims, we must determine whether we have jurisdiction. The Immigration and Naturalization Act ("INA") authorizes the Attorney General to cancel the removal of an otherwise-deportable alien if he or she meets certain requirements. *See* 8 U.S.C. § 1229b(b).[2] One such requirement is that the alien demonstrate that his or her removal "would result in *exceptional and extremely unusual hardship* to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.* § 1229b(b)(1)(D) (emphasis added). The INA also contains a jurisdiction-stripping provision, *id.* § 1252(a)(2)(B)(i) ("Subsection B(i)"), which deprives us of jurisdiction to review "any judgment regarding the granting of relief under section . . . 240A [can-

---

[1]Where, as here, the BIA summarily affirms the IJ's ruling without opinion, we review the IJ's decision as the final agency determination. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir. 2003).

[2]Specifically, the Act provides that an alien is eligible for cancellation of removal if he or she

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) has been a person of good moral character during such period;
>
> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
>
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1).

cellation of removal]." *Id.* We have interpreted this jurisdictional bar to encompass "all discretionary decisions involved in the cancellation of removal context, including the ultimate discretionary decision to deny relief." *Romero-Torres v. Ashcroft*, 327 F.3d 887, 890 (9th Cir. 2003). The question whether an alien's relatives are likely to suffer an exceptional and extremely unusual hardship upon the alien's removal is a discretionary decision because it is " 'a subjective question' that depends on the value judgment 'of the person or entity examining the issue'," not a legal determination. *Id.* at 891 (quoting *Kalaw v. INS*, 133 F.3d 1147, 1151 (9th Cir. 1997)); *see also Martinez-Rosas v. Gonzales*, 424 F.3d 926, 929 (9th Cir. 2005) ("[W]hether an alien demonstrated 'exceptional and extremely unusual hardship under 8 U.S.C. § 1229b(b)(1)(D) [i]s a discretionary determination and [i]s therefore unreviewable under [Subsection B(i)].").

**[2]** Nevertheless, Subsection B(i) does not deprive us of jurisdiction over questions pertaining to a petitioner's statutory eligibility for cancellation of removal, such as whether certain relatives qualify for consideration in the IJ's hardship analysis, because such questions are "purely legal and hence non-discretionary." *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1144-45 (9th Cir. 2002); *see id.* (holding that we have jurisdiction to review an IJ's conclusion as to whether an alien's adult child is a qualifying relative); *Molina-Estrada v. INS*, 293 F.3d 1089, 1093-94 (9th Cir. 2002) (holding that we have jurisdiction to consider whether an alien's parent is a lawful permanent resident). In addition, the Real ID Act of 2005, Pub.L. No. 109-13, div. B, 119 Stat. 231, vests us with jurisdiction to review "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D) ("Subsection D"). Still, we have held that Subsection D "did not alter our jurisdiction" over the agency's denial of an application for cancellation of removal. *Martinez-Rosas*, 424 F.3d at 929. We continue to "lack jurisdiction to review the IJ's subjective, discretionary determina-

tion that [a petitioner] did not demonstrate 'exceptional and extremely unusual hardship.' " *Id.* at 930.[3]

### III

Against this backdrop, the Mercados assert three challenges to the IJ's assessment of the hardships in their case, arguing that Subsection D provides us with jurisdiction to review all three.[4]

### A

First, the Mercados contend that the IJ underestimated the hardships in this case because it misconstrued Mr. Mercado's brother's statutory obligation to provide financial support to Mr. Mercado's parents. They suggest that such error creates a question of law subject to our review under Subsection D.

Mr. Mercado's parents gained lawful permanent residency status as "family-sponsored immigrants" under 8 U.S.C. § 1182(a)(4)(C). Their family sponsor was Mr. Mercado's brother, who was required to execute an affidavit promising

---

[3]After *Martinez-Rosas*, we decided *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007) (per curiam), *reh'g denied*, 504 F.3d 973. There, we held that the "questions of law" over which the Real ID Act vests this court with jurisdiction include "questions involving the application of statutes or regulations to undisputed facts," otherwise known as "mixed questions of fact and law." *Id.* at 650. Nevertheless, *Ramadan* emphasized that it did not infringe upon the rule that discretionary determinations are beyond our review. *Id.* at 654.

[4]We lack jurisdiction over the Mercados' claim that the IJ failed to serve as an impartial adjudicator or to afford them a full and fair hearing because they failed to assert such claim in their brief to the BIA. *See* 8 U.S.C. § 1252(d)(1) (stating that a "court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"); *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004) (holding that § 1252(d)(1) requires the alien to exhaust any claims of " 'procedural error' that an administrative tribunal could remedy" before we may consider such claims upon a petition for review).

to maintain his parents "at an annual income that is not less than 125 percent of the Federal poverty line." *Id.* § 1183a(a)(1)(A). Such promise is legally enforceable against Mr. Mercado's brother by his parents, the federal or any state government, or any entity that provides public assistance to his parents. *Id.* § 1183a(a)(1)(B).

In evaluating the hardship that would befall Mr. Mercado's parents if the Mercados were removed, the IJ considered Mr. Mercado's brother's obligation among other things. In so doing, the Mercados assert that the IJ incorrectly reasoned that Mr. Mercado's brother's obligation to provide financial support to his parents would compensate for the emotional, medical, physical, and financial support the Mercados currently provide.

**[3]** We need not consider whether the IJ actually made such an error because the question whether and to what extent Mr. Mercado's brother is likely to support his parents upon the Mercados' removal is not a question of law, but an evidentiary determination outside the scope of our review. *See Romero-Torres*, 327 F.3d at 887; *Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001).

B

**[4]** Next, the Mercados argue that the IJ abused his discretion by misapplying the facts of their case to the hardship standard, thereby violating their right to due process. Although we have jurisdiction to review due process claims arising from the agency's denial of cancellation of removal, such claims "must allege at least a colorable constitutional violation." *Martinez-Rosas*, 424 F.3d at 930. In *Martinez-Rosas*, we rejected the argument that an IJ's application of the facts of a petitioner's case to the hardship standard—in other words, the IJ's exercise of discretion—creates a colorable constitutional claim. *Id.* As we explained, "[s]uch an assertion is nothing more than an argument that the IJ abused his dis-

cretion, a matter over which we have no jurisdiction." *Id.* Therefore, the Mercados' second argument is foreclosed by our precedent.

## C

Finally, the Mercados assert that, if they are removed, they will take their children with them to Mexico but leave Mr. Mercado's parents behind. As a consequence, they suggest that the IJ's denial of their applications for cancellation of removal impacts the "unity" of their family, which they contend is a "fundamental right." Although the Mercados' acknowledge that their removal violates neither their own due process rights nor those of their family members, *see, e.g., Rubio de Cachu v. INS*, 568 F.2d 625 (9th Cir. 1977), they argue that the constitution requires judicial review over any hardship determination by the agency that impacts the unity of the family of the petitioner subject to removal. Thus, they argue that we must consider whether the IJ abused its discretion in evaluating the hardships in this case.

**[5]** Setting aside the questions whether "family unity" is a constitutionally-protected right or whether it is impacted by the removal of an alien from the United States, accepting the Mercados' argument would require us to ignore our precedent. In *Martinez-Rosas*, we held that Subsection D does not provide us with jurisdiction to review the agency's discretionary determination as to whether a petitioner's immediate family members would suffer an "exceptional and extremely unusual hardship" upon the petitioner's removal. 424 F.3d at 929-30. Creating an exception to this rule for any case where the petitioner's family unity is implicated would swallow the rule itself. The plain terms of the cancellation of removal statute require the IJ to consider whether removal would result in hardship to the petitioner's closest relatives—his or her "spouse, parent[s], or child[ren]." 8 U.S.C. § 1229b(b)(1)(D). Thus, *every* hardship determination by the agency affects the members of the petitioner's family and, hence, the "family

unity" the Mercados ask us to recognize. We have already held that we lack jurisdiction to review hardship determinations because they are committed to the discretion of the agency alone. *Martinez-Rosas*, 424 F.3d at 930. We lack the authority to reconsider that rule here. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("[A] later three-judge panel considering a case that is controlled by the rule announced in an earlier panel's opinion has no choice but to apply the earlier-adopted rule . . . .").[5]

IV

[6] Because we lack jurisdiction for the foregoing reasons, the Mercados' petitions for review are

**DISMISSED.**

---

[5]Moreover, the Mercados' asserted right to family unity is implausible. True, the Supreme Court has consistently defined "the freedom of personal choice in matters of marriage and family life [a]s one of the liberties protected by the Due Process Clause of the Fourteenth Amendment," *Moore v. City of E. Cleveland*, 431 U.S. 494, 499 (1977) (plurality opinion). Indeed, it has held that the Constitution protects freedom of choice with respect to childbearing, *see, e.g., Roe v. Wade*, 410 U.S. 113 (1973); *Griswold v. Connecticut*, 381 U.S. 479 (1965), the right of parents to custody of their biological children, *Stanley v. Illinois*, 405 U.S. 645 (1972), and parents' decision-making authority in matters of child rearing and education, *see, e.g., Wisconsin v. Yoder*, 406 U.S. 205 (1972). The denial of an application for cancellation of removal implicates none of those rights, and the Mercados point to no authority to suggest that the Constitution provides them with a fundamental right to reside in the United States simply because other members of their family are citizens or lawful permanent residents.