**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAUL MORALES-IZQUIERDO,
                  *Petitioner-Appellant,*

                  v.

DEPARTMENT OF HOMELAND
SECURITY; WILLIAM JOHNSTON,
District Director; ERIC H. HOLDER
JR., Attorney General,
                  *Respondents-Appellees.*

No. 08-35965

D.C. No.
2:03-cv-00089-TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, Senior District Judge, Presiding

Argued and Submitted
December 7, 2009—Seattle, Washington

Filed April 2, 2010

Before: Robert R. Beezer, Ronald M. Gould and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Gould

**COUNSEL**

Robert Pauw, Gibbs Houston Pauw, Seattle, Washington, for the petitioner-appellant.

Papu Sandhu, Senior Litigation Counsel, Office of Immigration Litigation, Washington, D.C., for the respondents-appellees.

## OPINION

GOULD, Circuit Judge:

Petitioner-Appellant Raul Morales ("Morales") filed an application to adjust his immigration status to that of a lawful permanent resident. His application was denied because his prior removal from the United States made him "inadmissible." Morales filed a petition for a writ of habeas corpus challenging the rejection by an Immigration and Naturalization Service ("INS") official of his adjustment-of-status application, denial of which by the district court prompted this appeal.

Morales contends that under our circuit's interpretation of the relevant statute at the time Morales filed his application, he was eligible for a discretionary waiver of inadmissibility. *See Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004). However, we have subsequently overruled that waiver precedent because of an intervening decision by the Board of Immigration Appeals ("BIA"). *See Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227 (9th Cir. 2007). Such deference is required by the Supreme Court's decision in *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005). Morever, after Morales filed his habeas corpus petition, the jurisdiction of federal district courts to hear habeas corpus challenges to administrative decisions relating to removal orders was curtailed by section 106(a) of the REAL ID Act. *See* 8 U.S.C. § 1252(a)(5). We consider whether Morales can challenge the denial of his adjustment-of-status application in a habeas corpus proceeding after enactment of the REAL ID Act, and whether our decision in *Gonzales*, overruling our prior interpretation of a statute as required by *Brand X*, makes Morales ineligible for waiver of inadmissibility.

# I

Raul Morales, a Mexican citizen, entered the United States without inspection in March 1990. Morales was later arrested by the INS[1] and placed in removal proceedings.[2] He did not attend his removal hearing and was ordered removed *in absentia* on September 14, 1994. Morales was removed to Mexico in January of 1998.

Morales reentered the United States without inspection on January 8, 2001. At some time between his 1998 removal and his 2001 reentry, Morales married a United States citizen. Two months after his illegal reentry into the United States, Morales and his U.S.-citizen wife appeared at an INS office in Spokane, Washington, seeking to adjust Morales's immigration status to that of a lawful permanent resident ("LPR").

Under section 245(i) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1255(i), an alien who enters the United States without inspection, under limited circumstances, can seek to adjust his or her immigration status to that of an LPR by filing an Application for Adjustment of Status ("Form I-485"). *See Chan v. Reno*, 113 F.3d 1068, 1071 (9th Cir. 1997). To do so, the alien must be "admissible" into the United States. 8 U.S.C. § 1255(i)(2)(A). Morales is not admissible because he unlawfully reentered the United States after having been previously removed. *See* 8 U.S.C.

---

[1]The INS ceased to exist and transferred its functions to the Department of Homeland Security ("DHS") on March 1, 2003. *See* Homeland Security Act of 2002, 6 U.S.C. §§ 101, 111, 251, 252.

[2]Before 1996, the relevant proceedings were called "deportation" proceedings. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996), altered the vocabulary of immigration law, replacing references to "deportation" with the term "removal." Although the two terms are not synonyms, the distinctions are immaterial for our present purposes. To avoid confusion, we use the term "removal" even when referring to pre-1996 deportation proceedings.

§ 1182(a)(9)(C)(i)(II). Under current law, Morales will remain permanently inadmissible unless, while residing outside the United States, Morales applies for and receives advance permission from the Secretary of Homeland Security ("Secretary") to reapply for admission. But Morales is not eligible for such advance permission until ten years have elapsed since his last departure from the United States. *See Id.* § 1182(a)(9)(C)(ii). This is commonly known as the "ten-year bar" to readmission.

When Morales's application for adjustment of status was pending, however, Morales may have been eligible for a discretionary waiver of inadmissibility, called a "Form I-212" waiver. *See* 8 C.F.R. § 212.2(e). In *Perez-Gonzalez*, we held that a Form I-212 waiver—if granted in conjunction with an alien's Form I-485 application for adjustment of status— could waive the ten-year bar to readmission and cure a previously removed alien's inadmissability. 379 F.3d at 795-96. But Morales did not file a Form I-212 waiver application at the time he filed his application for adjustment of status in 2001.[3]

On January 15, 2003, Morales appeared at the INS office in Spokane to check on his adjustment-of-status application and was taken into custody. The INS then denied Morales's application for adjustment of status and issued a Notice of Intent/Decision to Reinstate Prior Order ("Reinstatement Order") under 8 U.S.C. § 1231(a)(5) on the basis of Morales's 1998 removal. The reinstatement of a prior removal order bars an alien from applying for "any relief" from removal for which he or she might previously have been eligible. *See* INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). Once Morales's 1998 removal order was reinstated, he was no longer eligible for "relief" in the form of adjustment of status—even if he could

---

[3]In 2004, after his 1998 removal order had been reinstated and while the present judicial proceedings were pending, Morales reapplied for LPR status. At that time he filed a Form I-212 waiver application.

obtain a Form I-212 waiver. *See Padilla v. Ashcroft*, 334 F.3d 921, 925-26 (9th Cir. 2003).

Morales filed two petitions seeking review of these INS actions. The first, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, was filed on January 17, 2003, in the United States District Court for the Western District of Washington, challenging, among other things, the denial of Morales's application for adjustment of status. *Morales-Izquierdo v. INS*, No. 2:03-cv-89. The second, a petition for review of the Reinstatement Order, was filed directly in this court on February 13, 2003. *Morales-Izquierdo v. Gonzales*, No. 03-70674. The district court ordered the habeas corpus proceedings held in abeyance pending the outcome of the petition for review before this court.[4]

In November 2004, a three-judge panel of our court granted Morales's petition for review of the Reinstatement Order. *Morales-Izquierdo v. Ashcroft*, 388 F.3d 1299 (9th Cir. 2004). A majority of nonrecused active judges subsequently voted to rehear the case en banc. *Morales-Izquierdo v. Gonzales*, 423 F.3d 1118 (9th Cir. 2005).

While en banc proceedings were pending, the REAL ID Act, Pub. L. No. 109-13, Div. B., 119 Stat. 231 (May 11, 2005), went into effect. The REAL ID Act eliminated district court habeas corpus jurisdiction over orders of removal, vesting jurisdiction exclusively in the courts of appeals. *Puri v. Gonzales*, 464 F.3d 1038, 1041 (9th Cir. 2006). In December 2005, DHS moved the district court to transfer the claims raised in Morales's habeas proceedings to our court pursuant to the REAL ID Act. *See* Pub L. No. 109-13, § 106(c), 119 Stat. 311 (2005) (codified as a note following 8 U.S.C. § 1252). The district court denied that motion and DHS's motion for reconsideration, concluding that it retained habeas

---

[4]The district court also dismissed several of Morales's claims for lack of jurisdiction. Morales does not appeal the dismissal of those claims.

corpus jurisdiction for claims not directly challenging orders of removal. DHS then petitioned our court for a writ of mandamus on the same grounds. The en banc panel denied DHS's mandamus petition without reaching its merits, concluding that it did not meet the "extraordinarily high standard for obtaining a writ of mandamus." *United States v. U.S.D.C. W.D. Wash.*, 220 Fed. App'x 582 (9th Cir. 2007). On the same day, the en banc panel issued an opinion rejecting Morales's Reinstatement Order challenge. *Morales-Izquierdo v. Gonzales*, 477 F.3d 691 (9th Cir. 2007) (en banc), *amended by* 486 F.3d 484 (9th Cir. 2007) [hereinafter *Morales-Izquierdo I*].

Morales and DHS filed cross-motions for summary judgment before the district court on September 28, 2007. In his motion for summary judgment, Morales argued that the INS should have given him the opportunity to apply for a Form I-212 waiver before the denial of his adjustment-of-status application and the reinstatement of his 1998 removal order, and that, accordingly, Morales should be treated as having timely filed a Form I-212. The district court granted summary judgment for DHS, concluding that the INS had no duty to inform Morales of the availability of a Form I-212 waiver, and that, in any event, the reinstatement of Morales's 1998 removal order barred him from seeking to adjust his status.

While the district court was considering these motions, the law of our circuit relating to Form I-212 waivers changed. In *Gonzales v. DHS*, we overruled our prior precedent and held that a Form I-212 waiver could *not* be used to waive the statutory ten-year bar to readmission for previously removed aliens. 508 F.3d at 1242. We did so in deference to an intervening BIA decision interpreting ambiguous provisions of the INA, *In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006), as we were required to do by the Supreme Court's decision in *Brand X*. *See Gonzales*, 508 F.3d at 1235-42.

Morales timely appealed the district court's denial of his habeas corpus petition, and we have jurisdiction pursuant to

28 U.S.C. § 1291. On appeal, Morales argues that after the passage of the REAL ID Act, district courts retain habeas corpus jurisdiction to entertain challenges to the denial of applications for adjustment of status. On the merits, Morales argues that he was eligible for a Form I-212 waiver of inadmissibility at the time the INS denied his adjustment-of-status application and issued the Reinstatement Order, and that the INS violated its own regulations, due process, and our precedents by denying Morales's adjustment-of-status application without first giving him the opportunity to apply for a Form I-212 waiver. Morales seeks nunc pro tunc relief that would require DHS to consider his application for a Form I-212 waiver and adjustment of status under the standards used by the INS to review such applications in 2003. He argues that our intervening decision in *Gonzales*—which would make him ineligible for waiver of the ten-year bar—would not apply "retroactively" to a nunc pro tunc Form I-212 waiver application. Finally, Morales argues that the denial of his adjustment-of-status application violated the substantive due process rights possessed by Morales and his family members to live together as a family.

## II

We first decide whether or not the district court retained subject-matter jurisdiction, after the enactment of the REAL ID Act, to hear Morales's challenge to the denial of his adjustment-of-status application in a habeas corpus proceeding pursuant to 28 U.S.C. § 2241.[5] We review de novo whether a district court has subject-matter jurisdiction over a § 2241 action. *Johnson v. Reilly*, 349 F.3d 1149, 1153 (9th Cir. 2003).

---

[5]When Morales filed his habeas petition in 2003, the district court had habeas corpus jurisdiction to review purely legal challenges relating to the denial of an adjustment-of-status application. *See Rojas-Garcia v. Ashcroft*, 339 F.3d 814 817, 819 (9th Cir. 2003) (considering on the merits an appeal of the denial of a habeas corpus petition challenging an adjustment-of-status decision).

**[1]** Section 106(a)(iii) of the REAL ID Act, codified at 8 U.S.C. § 1252(a)(5), states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter . . . .

The Reinstatement Order to which Morales is subject qualifies as an order of removal that can only be challenged in a petition for review filed directly with our court. *See, e.g.*, *Gallo-Alvarez v. Ashcroft*, 266 F.3d 1123, 1127 (9th Cir. 2001) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1043-44 (9th Cir. 2001)).

**[2]** Moreover, because the Reinstatement Order is an "order of removal," it is subject to the INA's zipper clause. Under the zipper clause, any "questions of law and fact" arising from an order of removal must be raised in a petition for review of that order.[6] 8 U.S.C. § 1252(b)(9); *Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007). It is known as the "zipper" clause because it "consolidates or 'zips' judicial review of immigration proceedings into one action in the court of appeals." *Singh*, 499 F.3d at 976 (internal quotation marks omitted).

DHS urges us to interpret the denial of Morales's adjustment-of-status application as part of an "order of

---

[6]In the REAL ID Act, Congress amended the zipper clause explicitly to strip district courts of habeas corpus jurisdiction to hear challenges to final orders of removal, rendering courts of appeals with exclusive jurisdiction to hear challenges to removal orders. *See* REAL ID Act § 106(a)(2) (codified at 8 U.S.C. § 1252(b)(9)).

removal." That would make it subject to the INA's zipper clause, stripping the district court of habeas corpus jurisdiction and requiring Morales to challenge the denial of his adjustment-of-status application in a petition for review in our court.

At the outset, the literal meaning of the term "order of removal" appears to be at odds with the interpretation DHS urges us to adopt. A final order of removal is "the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is [removable], concluding that the alien is [removable] or ordering [removal]." *Singh*, 499 F.3d at 979 (internal quotation marks omitted). But an alien applying for adjustment of status is not necessarily removable, even if his or her adjustment-of-status application is denied. *See* 8 C.F.R. § 245.1 ("Any alien who is physically present in the United States . . . may apply for adjustment of status to that of a lawful permanent resident of the United States . . . ."). For aliens who lawfully reside within the United States, the denial of an adjustment-of-status application might very well be incompatible with the concept of an "order of removal," and under those circumstances we might be inclined to adopt Morales's view of the REAL ID Act's jurisdictional provisions. *Cf., e.g.*, *Singh*, 499 F.3d at 978 (holding ineffective assistance of counsel claim should be raised in habeas corpus petition because "[p]ost-REAL ID Act cases considering the applicability of § 1252 have also distinguished between challenges to orders of removal and challenges that arise independently").

**[3]** Under the circumstances presented to us here, however, we conclude that Morales's challenge to the adjudication of his adjustment-of-status application is appropriately characterized as a challenge to an "order of removal." Morales *has* been ordered removed from the United States, and Morales's adjustment-of-status challenge is inextricably linked to the reinstatement of his 1998 removal order. Until the Reinstate-

ment Order is vacated, Morales is not eligible for "any relief," including adjustment of status. *See* 8 U.S.C. § 1231(a)(5). Conversely, if Morales were granted the relief he seeks in the present habeas corpus petition—a nunc pro tunc Form I-212 waiver of inadmissibility and the adjustment of status to that of an LPR—the Reinstatement Order would be rendered invalid. Morales cannot challenge *only* the denial of his adjustment-of-status application without also impugning the Reinstatement Order, and therefore his present challenge is properly construed as a challenge to an "order of removal." *See INS v. Chadha*, 462 U.S. 919, 938 (1983) ("[T]he term 'final orders [of deportation]' . . . includes all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the hearing." (internal quotation marks omitted)).

The Supreme Court's longstanding decision in *Foti v. INS*, 375 U.S. 217 (1963), is instructive. In *Foti*, the Supreme Court, interpreting the term "final orders of deportation"—the predecessor of the term "order of removal"—held that the INS's denial of discretionary relief ancillary to an order of deportation was part of the "order of deportation" and was therefore subject to direct review by courts of appeals. *Id.* at 220-21. In so doing, the Court rejected a narrower interpretation that would refer only to adjudications of deportability, holding that such an interpretation would be "inconsistent with [the] manifest purpose of Congress" to consolidate immigration appeals in one proceeding and "prevent[ ] successive dilatory appeals to various federal courts." *Id.* at 226. "Review of the denial of discretionary relief is ancillary to the deportability issue, and both determinations should therefore be made by the same court at the same time." *Id.* at 227.

Similarly, to permit Morales's challenge to the denial of his adjustment-of-status application to proceed as a habeas corpus petition would be contrary to a central purpose of the REAL ID Act. Through the REAL ID Act, Congress sought to "limit all aliens to one bite of the apple with regard to challenging

an order of removal, in an effort to streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)." *Iasu v. Smith*, 511 F.3d 881, 887 (9th Cir. 2007). Yet "piecemeal review" is precisely what has happened in this case: Morales's petition for review of the Reinstatement Order proceeded before our court while his habeas corpus petition was held in abeyance before the district court, notwithstanding DHS's repeated motions to transfer and consolidate the proceedings. Because the district court denied Morales's habeas corpus petition, we are confronted with a second appeal addressing the same facts and circumstances raised in Morales's earlier petition for review. Although Morales's legal claims in the two proceedings differ, we have no doubt that the convoluted procedural history of this case would have been streamlined and accelerated by consolidated consideration before a single tribunal.

Other changes to the INA made by the REAL ID Act further persuade us that Congress intended that Morales's challenge to the denial of his adjustment-of-status application be raised in conjunction with his challenge to the Reinstatement Order in a petition for review. In 1996, the IIRIRA added a provision to the INA stripping all courts of jurisdiction to review decisions "that involve the exercise of discretion" under the INA's adjustment-of-status provision. *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1144 (9th Cir. 2002); *see also* 8 U.S.C. § 1252(a)(2)(B)(i) (2000). The REAL ID Act amended this provision to clarify that it also precludes actions brought under habeas corpus statutes, including § 2241. *See* § 106(a)(iii), 119 Stat. at 302 (codified at 8 U.S.C. § 1252(a)(2)(B)(i)). At the same time, the REAL ID Act added a provision stating that "[n]othing in [§ 1252(a)(2)(B)] . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." § 106(a)(iii), 119 Stat. at 302 (codified at 8 U.S.C.

§ 1252(a)(2)(D)). Although these provisions do not necessarily preclude Morales from seeking habeas corpus relief, *see Montero-Martinez*, 277 F.3d at 1144, the congressional preference for judicial review of adjustment-of-status challenges in petitions for review of orders of removal is unmistakable.

Morales argues that habeas corpus jurisdiction is necessary because his application for adjustment of status and the reinstatement of his prior removal order were adjudicated before different INS officers, and therefore the administrative record of his adjustment-of-status application would not be before us on a petition for review of the Reinstatement Order. We conclude that this argument is unpersuasive for several reasons. First, we are empowered to take judicial notice of the administrative record of an adjustment-of-status adjudication when necessary to decide the issues before us. *Cf., e.g.*, *Perez-Gonzalez*, 379 F.3d at 787 n.4 (taking judicial notice of the administrative record of an adjustment-of-status application).

Second, judicial review of the denial of adjustment of status is limited by statute to questions of law; courts lack jurisdiction to review factual determinations underlying adjustment-of-status decisions. 8 U.S.C. § 1252(a)(2)(B)(i); *see Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1113 (9th Cir. 2007); *Bazua-Cota v. Gonzales*, 466 F.3d 747, 748-49 (9th Cir. 2006) (per curiam). Although we do not doubt that the administrative record may on occasion prove vital to reviewing a denial of adjustment of status, many such questions of law are decided on the basis of pure law and undisputed facts, without need to resort to the administrative record. We are persuaded that appellate courts have, without difficulty, considered claims related to a denial of adjustment of status in a petition for review of the reinstatement of a prior removal order. *See, e.g.*, *Faiz-Mohammad v. Ashcroft*, 395 F.3d 799, 804-10 (7th Cir. 2005); *Perez-Gonzalez*, 379 F.3d at 790-96; *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1162-63 (10th Cir. 2004); *Lattab v. Ashcroft*, 384 F.3d 8, 21 (1st Cir. 2004).

Third, we do not believe that DHS's adoption of a bifurcated system to adjudicate adjustment-of-status applications and the reinstatement of prior removal orders is determinative here of what Congress meant when it enacted section 106(a) of the REAL ID Act. The existence of a bifurcated administrative procedure may be relevant to our interpretation of the statute. *See Cheng Fan Kwok v. INS*, 392 U.S. 206, 212-18 (1968) (holding that the discretionary denial of a stay of deportation is not a "final order of deportation" when it is made outside of deportation proceedings by a different INS officer than the special inquiry officer who presided over the deportation proceeding); *Foti*, 375 U.S. at 223 (interpreting a predecessor to section 106(a) in light of the "familiar administrative practice" effective at the time the statute was enacted).[7] But this procedural background is not necessarily dispositive. *See Chadha*, 462 U.S. at 938 (holding that a congressional one-House veto to suspend deportation qualifies as a challenge to a "final order of deportation" despite the fact that it "takes place outside the administrative [deportation] proceedings"). "Congress intended reinstatement to be a different and far more summary procedure than removal." *Morales-Izquierdo I*, 486 F.3d at 491. Adopting Morales's theory would turn the concept of summary reinstatement on its head. Aliens subject to removal for the first time would be limited by the "zipper clause" to challenging denials of adjustment of status in petitions for review in our court. *See* 8 U.S.C. § 1252(b)(9). But aliens subject to reinstatement would be entitled to file dilatory habeas corpus challenges in district court alleging the improper denial of discretionary relief, precisely because DHS—following congressional direction—adopts summary procedures for reinstating prior removal orders. We do not think Congress intended such a result.

---

[7]It is notable for present purposes that Congress has expressly broadened the jurisdiction of the court of appeals to hear a wider array of questions "relating to the removal process" since the days of *Cheng Fan Kwok. Flores-Miramontes v. INS*, 212 F.3d 1133, 1141 (9th Cir. 2000).

Morales also argues that habeas corpus jurisdiction is necessary to develop the factual record, which, because of DHS's summary reinstatement procedures, is not developed in an administrative fact-finding proceeding. We conclude that this argument is no more persuasive than his last. Courts are not permitted to review the factual determinations underlying the denial of an adjustment of status, and we believe it will be the exceptional case that will require further fact-finding to decide properly the questions of law raised on appeal. Moreover, in such an exceptional case, we are empowered by statute to transfer a petition for review to a district court for further development of the record. *See* 28 U.S.C. § 2347(b)(3); *Morgan v. Gonzales*, 495 F.3d 1084, 1090 (9th Cir. 2007). The mere possibility that a challenge might require further fact-finding does not require habeas corpus jurisdiction. *See Puri*, 464 F.3d at 1042 (rejecting a Suspension Clause challenge to REAL ID Act provisions stripping district courts of habeas corpus jurisdiction because courts of appeals are an "adequate substitute").

**[4]** In sum, we conclude that where an alien is subject to reinstatement of a prior removal order, the REAL ID Act requires that the alien challenge the denial of his or her adjustment-of-status application in a petition for review of the reinstatement order. The district court did not have § 2241 habeas corpus jurisdiction to hear Morales's challenge to the denial of his adjustment-of-status application.

**[5]** But rather than dismiss Morales's appeal for lack of jurisdiction, we choose to construe it as a petition for review timely filed in our court.**[8]** *See Freeman v. Gonzales*, 444 F.3d 1031, 1033 n.4, 1037 (9th Cir. 2006) (construing a habeas corpus petition challenging the denial of an adjustment-of-status application as a petition for review under the REAL ID

---

**[8]**The government in its briefing invites us to adopt this course. In light of the statutory framework and the purposes of the REAL ID Act, we conclude that the government states the correct position.

Act). Section 106(c) of the REAL ID Act provides the rule of decision, specifying that if an alien's § 2241 habeas corpus challenge was "pending in a district court on the date of enactment" of the REAL ID Act, "the district court shall transfer the case . . . to the court of appeals" and "[t]he court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review." Here, Morales filed his habeas corpus petition before the enactment of the REAL ID Act, and the transfer provision expressly applies to challenges to orders of removal. Although Morales's appeal from the denial of his habeas petition was not transferred at the time of the REAL ID Act's enactment, we conclude that construing Morales's appeal as a timely filed petition for review is consistent with the purpose of the REAL ID Act and its transfer provision. *See Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1053 (9th Cir. 2005) (construing a habeas petition as a timely filed petition for review in the absence of express congressional direction because doing so is consistent with the intent of Congress and the REAL ID Act's language and structure).

Treating Morales's appeal as a petition for review, we reach the merits of his challenge to denial of his adjustment-of-status application.[9]

## III

Morales argues that even though he did not file an application for a Form I-212 waiver when he applied for adjustment of status in 2001, errors of the INS entitle him to have his subsequently-filed Form I-212 waiver application treated as if it were timely filed in 2001. Morales has a problem, however: The current law of our circuit provides that a Form I-212

---

[9]In construing Morales's appeal as a petition for review, we review the underlying INS decision to deny Morales adjustment of status, rather than the district court's grant of summary judgment. *See Alvarez-Barajas*, 418 F.3d at 1053. We review de novo the INS's decision regarding purely legal questions. *Id.*

waiver, even if granted, does not cure the inadmissibility of an alien who reenters the United States without inspection after a prior removal. *Gonzales*, 508 F.3d at 1242; *see also* 8 U.S.C. § 1182(a)(9)(C)(ii). Morales concedes that if the holding in *Gonzales* applies to him, he cannot cure the deficiency in his adjustment-of-status application. Morales nonetheless argues that *Gonzales*—decided six years after Morales filed his first adjustment-of-status application and four years after his second—cannot be applied retroactively to make him ineligible for a waiver of inadmissibility. He argues that under the law that was established in our circuit prior to *Gonzales*, a Form I-212 waiver could cure his inadmissibility, that he was eligible for such a waiver, and that our prior law should apply to him. For the reasons stated below, we hold that our decision in *Gonzales* applies "retroactively" to Morales, and that he is ineligible for a Form I-212 waiver.

## A

In *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Supreme Court created a two-step inquiry for judicial review of an agency's construction of a statute that the agency is charged with administering. In the first step, we determine whether the meaning of the statute is unambiguous, "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If we conclude that the statute is "silent or ambiguous," we address the second step of *Chevron*, where we will defer to an agency's "permissible construction of the statute." *Id.* at 843. The United States Supreme Court revisited these issues in *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005). There, the Supreme Court clarified that *Chevron* analysis still applies in situations where an agency's later-in-time interpretation of a statute conflicts with a circuit court's earlier interpretation of the same statute. "A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court

decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id.* at 982. "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." *Id.* at 982-83.

In *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), we held that an alien who reenters the United States without inspection after having been previously removed is eligible for a nunc pro tunc Form I-212 waiver of the ten-year bar to admissibility created by 8 U.S.C. § 1182(a)(9)(C). *Id.* at 794. The text of the statute does not expressly provide for the possibility of discretionary waiver before the expiration of the ten-year bar. *See* 8 U.S.C. § 1182(a)(9)(C)(i)-(iii). However, we nonetheless held that INS could waive the ten-year bar after the alien had unlawfully reentered the United States, deferring to an INS regulation, 8 C.F.R. § 212.2(i)(2), that appeared to allow for such a waiver.[10] *See Perez-Gonzalez*, 379 F.3d at 794.

Two years later, in *In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006), the BIA explicitly rejected our prior interpretation of 8 U.S.C. § 1182(a)(9)(C) in *Perez-Gonzalez*, concluding instead that the statute did not permit waiver of the ten-year bar.[11] *Torres-Garcia*, 23 I. & N. Dec. at 875-76. "Even were we to assume that 8 C.F.R. § 212.2 did govern implementation of section 212(a)(9)(C)(ii), however, we could not interpret that regulation in a manner that is inconsistent with the plain language of the Act. . . . Congress has

---

[10]8 C.F.R. § 212.2(i)(2) states: "If the alien filed Form I-212 in conjunction with an application for adjustment of status under section 245 of the Act, the approval of Form I-212 shall be retroactive to the date on which the alien embarked or reembarked at a place outside the United States."

[11]To our knowledge, *Torres-Garcia* was the BIA's first precedential opinion addressing the availability of Form I-212 waivers for those subject to the ten-year bar under 8 U.S.C. § 1182(a)(9)(C).

given the Attorney General no authority to grant an alien a waiver of the section 212(a)(9)(C)(i) ground of inadmissibility, either retroactively or prospectively, prior to the end of this 10-year period." *Torres-Garcia*, 32 I. & N. Dec. at 875 (citing *Perez-Gonzalez v. Ashcroft*, 403 F.3d 1116, 1117-20 (9th Cir. 2005) (Gould, J., dissenting from denial of motion to reconsider)).

**[6]** In *Gonzales v. DHS*, 508 F.3d 1227 (9th Cir. 2007), we addressed the conflict between our 2004 decision in *Perez-Gonzalez* and the BIA's 2006 decision in *Torres-Garcia*. After determining that our holding in *Perez-Gonzalez* rested on an ambiguity in the statutory scheme, we concluded that *Brand X* required us to give *Chevron* deference to the BIA's subsequent reasonable interpretation of the statute. *See id.* at 1238-39. Reviewing *Torres-Garcia*, we concluded that the BIA's interpretation of 8 U.S.C. § 1182(a)(9)(C) was reasonable. *Gonzales*, 508 F.3d at 1242. We thus deferred to the BIA's interpretation of the statute, holding that our decision in *Perez-Gonzalez* had been "effectively overruled" to the extent it conflicted with *Torres-Garcia*. *Id.* at 1236 n.7, 1242. Under *Gonzales*, the current law of our circuit, 8 U.S.C. § 1182(a)(9)(C) bars aliens who have reentered the United States without inspection after removal from receiving discretionary waivers of inadmissibility before the ten-year bar has expired.

**B**

Ordinarily, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994). This results from the time-honored principle that when a court construes a statute, "it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Id.* at 313 n.12; *see also United States v. City of Tacoma*, 332 F.3d 574, 580 (9th Cir.

2003) ("The theory of a judicial interpretation of a statute is that the interpretation gives the meaning of the statute from its inception, and does not merely give an interpretation to be used from the date of the decision."). Thus, when a court applies a statute to the parties before it, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). *Gonzales* interprets 8 U.S.C. § 1182(a)(9)(C) to render aliens who have reentered the country illegally after a prior order of removal ineligible for a nunc pro tunc Form I-212 waiver of inadmissibility before expiration of the ten-year bar. We hold that *Gonzales* bars Morales's claim.

Morales argues that *Gonzales* does not render him ineligible to receive a nunc pro tunc Form I-212 waiver because *Gonzales* declares only that 8 U.S.C. § 1182(a)(9)(C) is ambiguous with respect to waivers of inadmissibility. According to Morales, our decision in *Gonzales* does not establish a definitive interpretation of what the INA has always meant, but rather that Congress has created a "gap" in the INA and delegated authority to DHS to fill in the gap. Morales argues, then, that the question is not whether our decision in *Gonzales* applies retroactively, but rather whether the BIA's interpretation of the INA in *Torres-Garcia* applies retroactively, because it is *Torres-Garcia* that gives content to the gap in 8 U.S.C. § 1182(a)(9)(C). And unlike a judicial decision, a decision made by an administrative agency acting in an adjudicatory capacity does not necessarily apply retroactively. *See, e.g.*, *Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322, 1328 (9th Cir. 1982) ("[W]hen a new problem is presented to an administrative agency, the agency may act through adjudication to clarify an uncertain area of the law, so long as the retroactive impact of the clarification is not excessive or unwarranted."). Therefore, Morales contends, we must conduct a multi-factor retroactivity analysis to determine whether

or not the rule of *Torres-Garcia* applies to him. *See, e.g.*, *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 951 (9th Cir. 2007).

At first, this creative argument seems to strike at the ancient, but still powerful, legal fiction that statutes have content before they are interpreted by courts, and that courts "find" that preexisting content. *See, e.g.*, 1 William Blackstone, Commentaries *69 (3d ed. 1884) ("[J]udges do not pretend to make a new law, but to vindicate the old one from misrepresentation."); Thomas Cooley, Constitutional Limitations *91 (1868) ("[I]t is said that which distinguishes a judicial from a legislative act is, that the one is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases."). It is easy to accept that the first time a court interprets an ambiguous statute, it is saying what the statute has always meant. *See, e.g.*, *Rivers*, 511 U.S. at 312-13. It is similarly plausible that when a superordinate court overrules the interpretation of an ambiguous statute by an inferior court, the superordinate court is correcting an "erroneous" interpretation of the statute and reaffirming what the statute has always meant.[12] *See id.* at 312. But when a court overrules its own prior interpretation of an ambiguous statute in deference to an interpretation by an agency—an agency that lacks the constitutional authority to overrule the court's prior interpretation—the fiction that the statute has always meant one particular thing may appear to break down. "[T]he agency's decision to construe the statute differently from a court does not say that the court's holding was legally wrong. Instead, the agency

---

[12]"[E]ven in such cases the subsequent judges do not pretend to make a new law, but to vindicate the old one from misrepresentation. For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was *bad law*; but that it was *not law*; that is, that it is not the established custom of the realm, as has been erroneously determined." Blackstone, *supra*, at *69.

may, consistent with the court's holding, choose a different construction . . . ." *Brand X*, 545 U.S. at 983.

**[7]** Yet, whatever disputes on theory of statutory interpretation may be sparked, we conclude that the interpretation of the INA that we adopted in *Gonzales* renders Morales ineligible for a Form I-212 waiver. True, *Gonzales* declared the INA ambiguous and deferred to the BIA's interpretation of the INA for the purpose of determining what the statute means. But statutory ambiguity alone has never been sufficient to render judicial interpretation of a statute non-retroactive.[13] *Gonzales* is still a judicial decision interpreting a statute, and courts remain "the final authority on issues of statutory construction." *Chevron*, 467 U.S. at 843 n.9. Under *Gonzales*, 8 U.S.C. § 1182(a)(9)(C)(ii) renders aliens in Morales's position ineligible for waiver of the ten-year bar. *See Gonzales*, 508 F.3d at 1242. That rule is dispositive and wholly scuttles the argument of Morales. Whatever the adjudicative history preceding *Gonzales*, and whatever the tools used in *Gonzales* to interpret the statute, a statute can have only one meaning, and *Gonzales* tells us what that meaning is. That it is a meaning different from our earlier interpretation in *Perez-Gonzalez* may challenge, absent some reconciling theory, a legal fiction on statutory interpretation that is ill equipped for a *Brand X* reality.[14] But in practice such deference is not markedly different from the case in which a federal court's interpretation of

---

[13]This is amply demonstrated by the many judicial decisions under *Chevron* deferring to an agency's interpretation of an ambiguous statute and applying that interpretation to the parties before the court. *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955-56 (9th Cir. 2009); *Marmolejo-Campos v. Holder*, 558 F.3d 903, 916-17 (9th Cir. 2009) (en banc); Perez-Enriquez v. Gonzales, 463 F.3d 1007, 1012-15 (9th Cir. 2006) (en banc).

[14]Justice Frankfurter observed, "We should not indulge in the fiction that the law now announced has always been the law . . . . It is much more conducive to law's self-respect to recognize candidly the considerations that give prospective content to a new pronouncement of law." *Griffin v. Illinois*, 351 U.S. 12, 26 (1956) (Frankfurter, J., concurring).

an ambiguous state law is overridden by a conflicting but authoritative interpretation of that law by a state court of last resort. *See Brand X*, 545 U.S. at 983-84; *cf. United Gas Pipe Line Co. v. Ideal Cement Co.*, 369 U.S. 134, 135 (1962) (vacating a decision of a federal court of appeals interpreting state law because it "was rendered in advance of construction [of the state law] by the courts of the State, which alone, of course, can define [the state law's] authoritative meaning"). Like a state court, the agency "remains the authoritative interpreter" of a statute it is charged with administering. *Brand X*, 545 U.S. at 983. And although an agency's power to override prior judicial precedent is more circumscribed than that of a state court, a subsequent judicial interpretation of the same statute based on *Brand X* deference is no less precedential simply because it relied on agency expertise that was not available to the earlier judicial panel.[15]

That *Gonzales* is ultimately a judicial interpretation of a federal statute places it on a fundamentally different plane from the body of retroactivity jurisprudence upon which Morales relies. *Montgomery Ward* and its progeny deal with the problems of retroactivity created when an agency, acting in an adjudicative capacity, so alters an existing agency-promulgated rule that it deprives a regulated party of the advance notice necessary to conform its conduct to the rule. *See, e.g.*, *Miguel-Miguel*, 500 F.3d at 949-50 (Attorney General's decision altering prior adjudicatory rule); *Chang v. United States*, 327 F.3d 911, 925-26 (9th Cir. 2003) (INS adjudicatory decisions altering terms of existing rule); *Montgomery Ward*, 691 F.2d at 1326, 1329 (FTC adjudicative decision interpreting 16 C.F.R. § 702.3). But new judicial

---

[15]Nor are we the first court to conclude that a new interpretation of a statute in light of *Brand X* is nonetheless entitled to the traditional trappings of judicial statutory interpretation. *See, e.g.*, *Fernandez v. Keisler*, 502 F.3d 337, 348-52 (4th Cir. 2007) (overruling prior precedent in light of *Brand X* and an intervening BIA interpretation, and denying a petition for review on the basis of the new statutory interpretation).

decisions interpreting old statutes have long been applied retroactively to all cases open on direct review, "regardless of whether . . . events predate or postdate" the statute-interpreting decision. *Harper*, 509 U.S. at 97.

Morales expresses a sense of unfairness engendered by the retrospective application of a new judicial interpretation of an old statute. But "[t]he essence of judicial decisionmaking . . . necessarily involves some peril to individual expectations." *Rivers*, 511 U.S. at 312. One could imagine a system that did not require retrospective application of statutory interpretations. But that is not the system that we have long administered in our courts. Courts have long interpreted ambiguous statutes to establish specific rules of law that have retroactive effect. That is because within our system of government, the Constitution vests Congress with the power to proscribe statutes that the judicial branch lacks the power to amend. It is a corollary of that principle that when a court interprets a statute, even an ambiguous one, and even when that interpretation conflicts with the court's own prior interpretation, the new interpretation is treated as the statute's one-and-only meaning. *See Griffith v. Kentucky*, 479 U.S. 314, 323 (1987) ("[The] assertion of power to disregard current law in adjudicating cases . . . that have not already run the full course of appellate review, is quite simply an assertion that our constitutional function is not one of adjudication but in effect of legislation." (quoting *Mackey v. United States*, 401 U.S. 667, 679 (1971) (Harlan, J., concurring in the judgment))). As the Supreme Court has said when interpreting our national charter, "[t]he source of a 'new rule' is the Constitution itself, not any judicial power to create new rules of law. Accordingly, the underlying right necessarily pre-exists our articulation of the new rule." *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008).

**[8]** Morales seeks a nunc pro tunc Form I-212 waiver to cure his inadmissibility and make him eligible for adjustment of status. But the law of our circuit in *Gonzales* explicitly and

without apology holds that 8 U.S.C. § 1182(a)(9)(C)—a statute that predates Morales's illegal reentry into the United States in 2001—does not permit such waivers. The statute and our precedent control our decision. We hold that a Form I-212 waiver cannot cure Morales's inadmissibility until the expiration of the ten-year bar.[16]

## C

Finally, Morales argues that denial of adjustment of status violates a substantive due process right of Morales and his family to live together as a family, by effectively excluding him from the United States for ten years. Morales cites *Moore v. City of East Cleveland*, 431 U.S. 494 (1977), in which the Supreme Court stated that "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment," and that "when the government intrudes on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation." *Id.* at 499.

**[9]** We may have sympathy for Morales's situation, insofar as it is always troubling when the impact of our immigration laws is to scatter a family or to require some United States citizen children to move to another country with their parent. But the right as asserted by Morales is one far removed from the right of United States citizens to live together as a family espoused in *Moore*. Morales "point[s] to no authority to suggest that the Constitution provides [him] with a fundamental

---

[16]Because we hold that Morales cannot cure his inadmissibility with a Form I-212 waiver, we do not reach his claims that the INS violated its own regulations, due process, and our precedent by not giving Morales an opportunity to apply for such a waiver. Even if the INS erred, its error could not have prejudiced Morales given our holding here. *See Berrum-Garcia*, 390 F.3d at 1168.

right to reside in the United States simply because other members of [his] family are citizens or lawful permanent residents." *De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009). Moreover, adjustment of status is a form of relief committed to the Secretary's discretion, and "[s]ince discretionary relief is a privilege created by Congress, denial of such relief cannot violate a substantive interest protected by the Due Process clause." *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003). In short, lawfully denying Morales adjustment of status does not violate any of his or his family's substantive rights protected by the Due Process Clause.

To hold otherwise would create a barrier to removing an illegal alien like Morales in any case where that alien has married a United States citizen wife or fathered United States citizen children. Stated another way, to indulge this theory is to hold that an illegal alien with United States citizen family members cannot be removed, regardless of the illegality of that alien's entry into the United States or conduct while within its borders. Such a remarkable proposition, which would radically alter the status quo of our immigration law, simply cannot be gained by judicial fiat from an intermediate court. If there is to be such a fundamental change in immigration law, it must originate with the Congress or with the United States Supreme Court, and not at our level of the judiciary.

## IV

**[10]** We conclude that the REAL ID Act stripped the district court of habeas corpus jurisdiction to consider Morales's challenge to the administrative denial of his adjustment-of-status application, because the denial was part of a reinstatement order constituting an "order of removal." Construing the appeal as a timely filed petition for review, we hold that our interpretation of the INA in *Gonzales*—following the Supreme Court's directive in *Brand X* and overruling our prior interpretation of the statute—applies to all cases cur-

rently on direct review. Accordingly, a Form I-212 waiver cannot cure Morales's inadmissibility under 8 U.S.C. § 1182(a)(9)(C). Denying his adjustment-of-status application does not violate due process, even in the light of impact on his family. Morales is not eligible to adjust his status.

PETITION DENIED.