# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AURELIO DURAN GONZALES; MARIA
C. ESTRADA; MARIA LUISA
MARTINEZ DE MUNGUIA; IRMA
PALACIOS DE BANUELOS; LUCIA
MUNIZ DE ANDRADE; KARINA
NORIS; ADRIANA POUPARINA,
   *Plaintiffs-Appellants,*

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY and JANET NAPOLITANO,
Secretary of the Department of
Homeland Security,
   *Defendants-Appellees.*

No. 09-35174

D.C. No.
2:06-cv-01411-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, Chief District Judge, Presiding

Argued and Submitted
September 21, 2011—San Francisco, California

Filed October 25, 2011

Before: William C. Canby, Jr., Barry G. Silverman, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

19299

**COUNSEL**

Matt Adams (argued), Northwest Immigration Rights Project, of Seattle, Trina Realmuto, Beth Werlin, American Immigration Law Foundation of Washington D.C., Marc Van Der Hout, Stacy Tolchin, Van Der Hout, Brigagliano & Nightingale of San Francisco, for the plaintiffs-appellants.

Tony West, Assistant Attorney General, David J. Kline, Elizabeth J. Stevens (argued), and Sherease Pratt, of Washington, D.C., for the defendants-appellees.

**OPINION**

CALLAHAN, Circuit Judge:

Aurelio Duran Gonzalez, along with six individuals ("Plaintiffs"), voluntarily filed applications for adjustment of status, thus disclosing that they were aliens who had been removed and had reentered the United States without inspection. They did this in reliance on the Ninth Circuit's opinion in *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783 (9th Cir. 2004), wherein the court purportedly held that individuals like Plaintiffs were eligible for relief. The district court certified Plaintiffs' proposed class and issued a preliminary injunction.

The government appealed, and in *Duran Gonzales v. Department of Homeland Security*, 508 F.3d 1227 (9th Cir.

2007) ("*Duran Gonzales II*"), we held that, pursuant to the Supreme Court's directions in *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-985 (2005) ("*Brand X"),* we were compelled to follow the 2006 opinion by the Board of Immigration Appeals ("BIA") in *In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006). In *In re Torres-Garcia*, the BIA held that individuals such as Plaintiffs were not eligible for relief. We held that, because this was a reasonable interpretation of a statute by the agency charged with interpreting and enforcing the statute, and because our prior opinion in *Perez-Gonzalez* was based on the statute's ambiguity, *Brand X* required that we defer to the BIA's interpretation of the statute, even though it was contrary to our prior interpretation of the statute in *Perez-Gonzalez*. *Duran Gonzales II*, 508 F.3d at 1242.

Accordingly, we vacated the district court's injunction and remanded the matter. Our opinion stated that "[p]ursuant to *In re Torres-Garcia*, plaintiffs as a matter of law are not eligible to adjust their status because they are ineligible to receive I-212 waivers." *Id*. On remand, the district court held that *Duran Gonzales II* was binding, declined to allow Plaintiffs to amend their complaint or the class certification, and dismissed Plaintiffs' action.

Plaintiffs appeal, arguing that *Duran Gonzales II* should be given prospective application only. We affirm the district court's dismissal of the action because *Duran Gonzales II* applied its ruling to the Plaintiffs, and another three-judge panel has held that *Duran Gonzales II* has retroactive application. *See Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1086 (9th Cir. 2010).

# I

Plaintiffs are individuals who are not citizens of the United States, who were previously deported or removed from the United States, and who reentered the United States without

inspection. After returning to the United States, Plaintiffs sought to adjust their immigration status by filing applications for adjustment of status under 8 U.S.C. § 1255. The statute "allowed the Attorney General to adjust the status of an alien who had entered the United States without inspection to that of a legal permanent resident provided that the alien (1) was admissible to the United States and the beneficiary of an immediately available immigrant visa, and (2) paid an application fee five times the usual fee." *Duran Gonzales II*, 508 F.3d at 1230.

Plaintiffs' course to adjustment of status, however, was complicated by two provisions of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"). The first appeared to deny Plaintiffs relief. Title 8 U.S.C. § 1231(a)(5) provides "for automatic reinstatement of an alien's prior removal or deportation order when an alien has reentered the United States illegally," and further provides that the "alien is not eligible and may not apply for any relief." *Duran Gonzales II*, 508 F.3d at 1230.

The second section suggested a possible exception to this bar. Although 8 U.S.C. § 1182(a)(9)(C)(i) provides that an alien "who enters or attempts to reenter the United States without being admitted is inadmissible," § 1182(a)(9)(C)(ii) creates an exception for

> an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Secretary of Homeland Security has consented to the alien's reapplying for admission.

8 U.S.C. § 1182(a)(9)(C)(ii). The exception had two conditions of particular relevance to Plaintiffs: (1) it was only available if made more than 10 years after the alien's last

departure; and (2) the application has to be made from outside the United States.

Plaintiffs, however, found encouragement in our opinion in *Perez-Gonzalez*, which held "that the INS committed legal error when it concluded that Perez-Gonzalez could not apply for a Form I-212 waiver from within this country." *Perez-Gonzalez*, 379 F.3d at 789. Accordingly, Plaintiffs filed both I-212 forms seeking relief under § 1182(a)(9)(C)(ii) and applications for adjustment of status under § 1255(i) with the United States Citizenship and Immigration Services ("USCIS"). USCIS denied three of the Plaintiffs' applications on the ground that the ten-year period had not elapsed since the dates of the applicants' last departures from the United States.

Plaintiffs then filed their complaint with the United States District Court for the Western District of Washington. They argued that USCIS's position — that an alien's failure to meet the ten-year requirement barred a successful I-212 application — was contrary to *Perez-Gonzalez*, and sought injunctive and declaratory relief, a temporary restraining order, and class certification. The district court granted a preliminary injunction and certified a class. The Department of Homeland Security filed a timely appeal.

## II

**[1]** On appeal, we were constrained by the Supreme Court's opinion in *Brand X*, 545 U.S. 967, in which the Court "held that the circuit court must apply *Chevron* deference to an agency's interpretation of a statute regardless of the circuit court's contrary precedent, provided that the court's earlier precedent was an interpretation of a statutory ambiguity." *Duran Gonzales II*, 508 F.3d at 1235-36. We determined "that, despite some language to the contrary, *Perez-Gonzalez* was based on a finding of statutory ambiguity that left room for agency discretion." *Id.* at 1237. We explained:

by declining to adhere to the plain language of the inadmissibility provision and instead falling back on the regulations, *Perez-Gonzalez* did not find the inadmissibility provision, nor the statutory scheme, to be unambiguous. Accordingly, we are not bound by *Perez-Gonzalez* and must defer to *In re Torres-Garcia* if its interpretation of the governing statute is reasonable.

*Id.* at 1238-39. We recognized that in deciding *In re Torres-Garcia* the BIA considered various interpretations of the statutes, including our approach in *Perez-Gonzalez*, and found "the more reasonable interpretation of the statutory framework to be that an alien may not obtain a waiver under subsection (a)(9)(C)(ii), retroactively or prospectively, without regard to the ten-year bar."[1] *Id.* at 1241. We determined that the BIA's decision was "clearly reasonable" and entitled to *Chevron* deference under *Brand X. Id.* at 1242.

[2] The final paragraph in *Duran Gonzales II* states:

we vacate the district court's order because we hold today that we are bound by the BIA's interpretation

---

[1]The BIA reasoned:

*Perez-Gonzalez* allows an alien to obtain a section 212(a)(9)(C)(ii) waiver nunc pro tunc even though such a waiver would have been unavailable to him had he sought it prospectively, thereby placing him in a better position by asking forgiveness than he would have been in had he asked permission. Such an interpretation contradicts the clear language of section 212(a)(9)(C)(ii) and the legislative policy underlying section 212(a)(9)(C) generally. We find that the more reasonable interpretation of the statutory framework discussed above is that an alien may not obtain a waiver of the section 212(a)(9)(C)(i) ground of inadmissibility, retroactively or prospectively, without regard to the 10-year limitation set forth at section 212(a)(9)(C)(ii).

*In re Torres-Garcia*, 23 I. & N. Dec. at 876.

of the applicable statutes in *In re Torres-Garcia*, even though that interpretation differs from our prior interpretation in *Perez-Gonzalez*. **Pursuant to *In re Torres-Garcia*, plaintiffs as a matter of law are not eligible to adjust their status because they are ineligible to receive I-212 waivers**. . . . The case is remanded for further proceedings consistent with this opinion.

508 F.3d at 1242-43 (emphasis added). Plaintiffs filed a petition for rehearing and suggestion for rehearing which included an argument that the opinion should not be applied retroactively. The panel denied the petition for rehearing, and a majority of the active judges declined the suggestion for rehearing en banc.

In the district court on remand, Plaintiffs argued that *Duran Gonzales II* should be given prospective application only and not applied to them. They also sought to amend their class certification to include only those individuals who filed I-212 applications prior to our opinion in *Duran Gonzales II*.

The district court rejected Plaintiffs' arguments, denied their motion to amend class certification, denied their motion to file an amended complaint, and dismissed the action. The district court rejected Plaintiffs' argument against *Duran Gonzales II*'s retroactivity because "the Circuit court stated conclusively that the BIA's interpretation of the statute applied to Plaintiffs," and held that "the retroactive application of *In re Torres-Garcia* is simply not an open question before this Court."[2] The court reasoned that allowing Plaintiffs to amend their complaint or to amend their class certification would be futile because neither amendment could

---

[2]Citing *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), the district court reasoned that the "Ninth Circuit's silence on the retroactivity of its decision requires this Court to assume that it carries full retrospective effect."

change the presumptive retroactive effect of *Duran Gonzales II*. Plaintiffs filed this timely appeal.

### III

Following our remand in *Duran Gonzales II*, we issued two opinions that bear on our consideration of this appeal: *Morales-Izquierdo*, 600 F.3d 1076, and *Nunez-Reyes v. Holder*, 646 F.3d 684 (9th Cir. 2011) (en banc).

#### A.   *Morales-Izquierdo v. Holder*

Raul Morales, a citizen of Mexico, illegally entered the United States in 1990. After being arrested by the INS, Morales was ordered removed in 1994 and was actually removed to Mexico in 1998. 600 F.3d at 1079. He subsequently reentered the United States, again without inspection, in 2001. *Id*. After being removed but before reentering, Morales married a United States citizen. *Id*. Following his reentry without inspection, Morales sought to adjust his status through his citizen-wife. *Id*. In 2003, Morales was taken into custody, his application for adjustment of status was denied, and a Notice of Intent to/Decision to Reinstate Prior Order (on the basis of his 1998 removal) was issued. *Id*. at 1079-80.

Morales filed several petitions seeking review of these actions. We granted his initial petition for review of the reinstatement order. *Morales-Izquierdo v. Ashcroft*, 388 F.3d 1299 (9th Cir. 2004). Further litigation ensued, however, and when his case was again before us in 2010, one of the issues was whether *Duran Gonzales II* applied to his situation. We explained:

> Morales argues that even though he did not file an application for a Form I-212 waiver when he applied for adjustment of status in 2001, errors of the INS entitle him to have his subsequently-filed Form I-212 waiver application treated as if it were timely

filed in 2001. Morales has a problem, however: The current law of our circuit provides that a Form I-212 waiver, even if granted, does not cure the inadmissibility of an alien who reenters the United States without inspection after a prior removal. *Gonzales*, 508 F.3d at 1242; *see also* 8 U.S.C. § 1182(a)(9)(C)(ii). Morales concedes that if the holding in *Gonzales* applies to him, he cannot cure the deficiency in his adjustment-of-status application. Morales nonetheless argues that *Gonzales* — decided six years after Morales filed his first adjustment-of-status application and four years after his second — cannot be applied retroactively to make him ineligible for a waiver of inadmissibility. He argues that under the law that was established in our circuit prior to *Gonzales*, a Form I-212 waiver could cure his inadmissibility, that he was eligible for such a waiver, and that our prior law should apply to him.

*Morales-Izquierdo*, 600 F.3d at 1086.

In rejecting Morales's argument, we started with the standard that "[o]rdinarily, '[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.' " *Id.* at 1087-88 (quoting *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994)). We further commented that "[t]hus, when a court applies a statute to the parties before it, 'that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule.' " *Id.* at 1088 (quoting *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993)).

We rejected Morales's argument that *Duran-Gonzales II*

was similar to an agency decision and its retroactivity should be evaluated pursuant to a multi-factor standard.[3] We held:

> Yet, whatever disputes on theory of statutory interpretation may be sparked, we conclude that the interpretation of the INA that we adopted in *Gonzales* renders Morales ineligible for a Form I-212 waiver. True, *Gonzales* declared the INA ambiguous and deferred to the BIA's interpretation of the INA for the purpose of determining what the statute means. But statutory ambiguity alone has never been sufficient to render judicial interpretation of a statute non-retroactive. *Gonzales* is still a judicial decision interpreting a statute, and courts remain "the final authority on issues of statutory construction." *Chevron*, 467 U.S. at 843 n.9, . . . . Under *Gonzales*, 8 U.S.C. § 1182(a)(9)(C)(ii) renders aliens in Morales's position ineligible for waiver of the ten-year

---

[3]We described Morales's argument as follows:

> According to Morales, our decision in *Gonzales* does not establish a definitive interpretation of what the INA has always meant, but rather that Congress has created a "gap" in the INA and delegated authority to DHS to fill in the gap. Morales argues, then, that the question is not whether our decision in *Gonzales* applies retroactively, but rather whether the BIA's interpretation of the INA in *Torres-Garcia* applies retroactively, because it is *Torres-Garcia* that gives content to the gap in 8 U.S.C. § 1182(a)(9)(C). And unlike a judicial decision, a decision made by an administrative agency acting in an adjudicatory capacity does not necessarily apply retroactively. *See, e.g., Montgomery Ward & Co., Inc. v. FTC*, 691 F.2d 1322, 1328 (9th Cir. 1982) ("[W]hen a new problem is presented to an administrative agency, the agency may act through adjudication to clarify an uncertain area of the law, so long as the retroactive impact of the clarification is not excessive or unwarranted."). Therefore, Morales contends, we must conduct a multi-factor retroactivity analysis to determine whether or not the rule of *Torres-Garcia* applies to him. *See, e.g., Miguel-Miguel v. Gonzales*, 500 F.3d 941, 951 (9th Cir. 2007).

*Morales-Izquierdo*, 600 F.3d at 1088.

> bar. *See Gonzales*, 508 F.3d at 1242. That rule is dis-
> positive and wholly scuttles the argument of Mora-
> les. Whatever the adjudicative history preceding
> *Gonzales*, and whatever the tools used in *Gonzales*
> to interpret the statute, a statute can have only one
> meaning, and *Gonzales* tells us what that meaning is.

*Morales-Izquierdo*, 600 F.3d at 1089.

Our reasoning led us to reject Morales's request for "a nunc pro tunc Form I-212 waiver to cure his inadmissibility and make him eligible for adjustment of status." *Id.* at 1090. We held that "the law of our circuit in *Gonzales* explicitly and without apology holds that 8 U.S.C. § 1182(a)(9)(C) . . . does not permit such waivers." *Id.* at 1091. We concluded that the statute and our precedent were controlling and that "a Form I-212 waiver cannot cure Morales's inadmissibility until the expiration of the ten-year bar." *Id.*

### B.   *Nunez-Reyes v. Holder*

Flavio Nunez-Reyes entered the United States in 1992 and in 2001 was charged in state court with a felony count and a misdemeanor count involving methamphetamine. He pled guilty to both counts and the state court subsequently dismissed the charges under a state provision wherein courts were directed to set aside convictions and dismiss indictments should a defendant successfully complete a drug treatment program along with other conditions. Under the California provision, "both the arrest and the conviction shall be deemed never to have occurred." *Nunez-Reyes*, 646 F.3d at 687. In 2002, the federal government found Nunez-Reyes removable, and his applications for adjustment of status and petition for cancellation of removal were denied by the BIA. *Id.*

The en banc panel first overruled our prior decision in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), and held "that the constitutional guarantee of equal protection

does not require treating, for immigration purposes, an expunged state conviction of a drug crime the same as a federal drug conviction that has been expunged under the" Federal First Offender Act. *Nunez-Reyes*, 646 F.3d at 690.

The panel, however, determined that this holding "will apply only prospectively."[4] *Id.* at 694. The panel recognized that the "default principle is that a court's decisions apply retroactively to all cases still pending before the courts." *Id.* at 690. However, "courts may depart from that default principle only in certain circumstances, as outlined in" *Chevron Oil Co. v. Hudson*, 404 U.S. 97 (1971). *Nunez-Reyes*, 646 F.3d at 690. Before applying the *Chevron Oil* factors, the panel noted that "a court announcing a new rule of law must decide between pure prospectivity and full retroactivity." *Id.* (citing *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 537-38 (1991) (Souter J., plurality opinion)).

The panel identified the *Chevron Oil* factors as: "(1) whether the decision establish[es] a new principle of law; (2) whether retrospective operation will further or retard [the rule's] operation in light of its history, purpose, and effect; and (3) whether our decision could produce substantial inequitable results if applied retroactively." *Nunez-Reyes*, 646 F.3d at 692 (internal quotation marks and citation omitted). The panel found that there was no question that its ruling established a new principle of law. *Id.* It next determined that the retroactive application of its decision created the potential for unfairness, explaining:

> Those aliens were assured that, after completion of drug treatment, there would be absolutely no legal consequences. Their waiver of their constitutional

---

[4]The panel explained that "[f]or those aliens convicted before the publication date of this decision, *Lujan-Armendariz* applies. For those aliens convicted after the publication date of this decision, *Lujan-Armendariz* is overruled." 646 F.3d at 694.

rights was in reliance on *Lujan-Armendariz*. In these circumstances, we easily conclude that the third *Chevron Oil* factor is met: our decision "could produce substantial inequitable results if applied retroactively." *Chevron Oil*, 404 U.S. at 107 . . . . It would be manifestly unfair effectively to hoodwink aliens into waiving their constitutional rights on the promise of no legal consequences and, then, to hold retroactively that their convictions actually carried with them the "particularly severe 'penalty' " of removal, *Padilla*, 130 S. Ct. at 1481 . . . .

*Nunez-Reyes,* 646 F.3d at 693-94. Finally, the panel concluded that the second *Chevron Oil* factor was met: "retroactive application will not further the rule's operation." *Id.* at 694. The court reasoned that "Congress did not intend adverse immigration consequences for those who were merely charged with a crime or suspected of a crime."[5] *Id.*

---

[5]The panel explained:

Relevant here, we think it is a reasonable assumption that Congress intended adverse immigration consequences only for those who were convicted *either* after the exercise of their constitutional rights, such as the right to trial, *or* after an informed waiver of those constitutional rights. As discussed above, many alien defendants fell into neither category. Instead, they pleaded guilty and waived their constitutional rights with a wholly uninformed understanding of the consequences of their plea. Contrary to their understanding that there would be *no* immigration consequences, the actual consequence is the severe penalty of removal. Nothing in the statute or its history, purpose, or effect suggests that Congress intended adverse immigration consequences for those whose waiver of constitutional rights turned out to be so illinformed. Indeed, the Supreme Court has instructed that such a gross misunderstanding of the immigration consequences of a plea, when caused by incompetent counsel, rises to the level of a constitutional violation. *Padilla*, 130 S. Ct. at 1486-87.

*Nunez-Reyes*, 646 F.3d at 694 (emphases in original).

As explained in the next section, the principles set forth in *Morales-Izquierdo* and *Nunez-Reyes* require that we affirm the district court's dismissal of Plaintiffs' complaint.

## IV

Although the district court's denial of leave to amend is reviewed for abuse of discretion, *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009), as is an order on class certification, *Parra v. Bashas', Inc.*, 536 F.3d 975, 977 (9th Cir. 2008), the essence of Plaintiffs' appeal is that the district court erred in holding that *Duran Gonzales II* applied to them. This underlying conclusion of law is reviewed de novo. *See Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 650 (9th Cir. 2007).

On appeal, Plaintiffs assert that the district court erred in holding that *Duran Gonzales II* applied retroactively to all class members and in failing to independently determine whether it should be applied to them. We disagree and hold that the district court could not have determined that *Duran Gonzales II* applied prospectively only and hold that we are unable to give *Duran Gonzales II* only prospective application.

### A. The District Court Could Not Determine That *Duran Gonzales II* Applies Prospectively Only.

**[3]** We reiterated in *Nunez-Reyes* that the "default principle is that a court's decisions apply retroactively to all cases still pending before the courts." 646 F.3d at 690; *see also Harper*, 509 U.S. at 97. Furthermore, we continue to adhere to the Supreme Court's admonishment that if a decision is not to be given retroactive effect, its prospective-only application should be announced in the opinion itself. In *Harper*, the Supreme Court stated:

> When this Court does not "reserve the question whether its holding should be applied to the parties

before it," however, an opinion announcing a rule of federal law "is properly understood to have followed the normal rule of retroactive application" and must be "read to hold . . . that its rule should apply retroactively to the litigants then before the Court."

509 U.S. at 97-98 (quoting *Beam*, 501 U.S. at 539); *see also United States v 20832 Big Rock Drive,* 51 F.3d 1402, 1406 (9th Cir. 1995) (holding that "it is now clear that a new rule of law applies retroactively to civil cases on direct review or those not yet final if it is applied to the parties in the case in which it is announced").

**[4]** Thus, *Duran Gonzales II* would have retroactive application even if it did not address retroactivity. But it was not silent. The final paragraph held that "plaintiffs as a matter of law are not eligible to adjust their status because they are ineligible to receive I-212 waivers." *Duran Gonzales II*, 508 F.3d at 1242. Because this court applied its holding in *Duran Gonzales II* to the parties before it, the ruling is retroactive.

**[5]** Moreover, Plaintiffs have not cited any authority, nor have we found any, that would allow a district court to interpret, in the first instance, whether a Ninth Circuit opinion applied prospectively only or retroactively. Rather, the general rule is that:

> On remand, a trial court may not deviate from the mandate of an appellate court. As we have stated earlier, "[w]hen a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Firth v. United States*, 554 F.2d 990, 993 (9th Cir.1977); . . . . The Supreme Court long ago emphasized that when acting under an appellate court's mandate, an inferior court "cannot vary it, or examine it for any other purpose than exe-

cution; or give any other or further relief; or review it, even for apparent error, upon any matter decided upon appeal; or intermeddle with it, further than to settle so much as has been remanded." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 . . . (1895).

*Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1337 (9th Cir. 1984). Here, the district court properly determined that *Duran Gonzales II* applied retroactively to Plaintiffs.

### B. This Panel May Not Now Rule That *Duran Gonzales II* Applies Only Prospectively And Not Retroactively.

Even if *Duran Gonzales II* could be read as not clearly holding that it had retroactive application (by applying its ruling to the parties before it), the fact that *Duran Gonzales II* did not otherwise "reserve the question whether its holding should be applied to the parties before it" would be dispositive. *See Harper,* 509 U.S. at 97-98. It is now too late to apply *Duran Gonzales II* prospectively only. Since its announcement in 2007, the "normal rule of retroactive application" has applied and presumably *Duran Gonzales II* has been routinely applied by district courts and the BIA in other cases. Indeed, *Duran Gonzales II* has been cited approvingly by two other circuit courts. *See Delgado v. Mukasey*, 516 F.3d 65, 73 (2d Cir. 2008), and *Gonzalez-Balderas v. Holder*, 597 F.3d 869, 870 (7th Cir. 2010).

**[6]** Furthermore, our opinion in *Morales-Izquierdo*, 600 F.3d 1076, held that *Duran Gonzales II* applies retroactively, and we are bound by that decision. *See Santamaria v. Horsley*, 110 F.3d 1352, 1355 (9th Cir. 1997) ("It is settled law that one three-judge panel of this court cannot ordinarily reconsider or overrule the decision of a prior panel."). The *Morales-Izquierdo* court fully considered retroactivity. It commented that "[w]hatever the adjudicative history preceding *Gonzales*, and whatever the tools used in *Gonzales* to

interpret the statute, a statute can have only one meaning, and *Gonzales* tells us what that meaning is." *Morales-Izquierdo*, 600 F.3d at 1089. The court concluded that "*Gonzales* is ultimately a judicial interpretation of a federal statute," and despite Morales's "sense of unfairness engendered by the retrospective application of a new judicial interpretation of an old statute[,] . . . when a court interprets a statute, even an ambiguous one, and even when that interpretation conflicts with the court's own prior interpretation, the new interpretation is treated as the statute's one-and-only meaning." *Id.* at 1090 (citing *Griffith v. Kentucky*, 479 U.S. 314, 323 (1987)). Accordingly, we held that *Duran Gonzales II* applied to Morales and "to all cases currently on direct review." *Morales-Izquierdo*, 600 F.3d at 1092.

Plaintiffs attempt to distinguish *Morales-Izquierdo* on the ground that Morales's reliance on *Perez-Gonzalez* was not as reasonable as Plaintiffs' reliance. The argument is not well taken. In *Nunez-Reyes*, we reaffirmed that "a court announcing a new rule of law must decide between pure prospectivity and full retroactivity," and, citing Justice Souter's plurality opinion in *James B. Beam Distilling Co.*, 501 U.S. at 537-38, confirmed that weighing "the equities on a case-by-case basis[ ] is foreclosed." 646 F.3d at 690-91. Thus, *Morales-Izquierdo*'s holding of retroactivity cannot be distinguished on the ground that Morales's alleged reliance on *Perez-Gonzalez* was somehow less serious or reasonable than Plaintiffs' reliance on the opinion.

**[7]** *Duran Gonzales II* specifically applied its ruling to the petitioners before it and in *Morales-Izquierdo*, a separate three-judge panel confirmed that *Duran Gonzales II* applies retroactively; we are bound by these decisions. It follows that the holding in *Duran Gonzales II* that "plaintiffs as a matter of law are not eligible to adjust their status because they are

ineligible to receive I-212 waivers," 508 F.3d at 1242, applies to Plaintiffs and undermines their legal action.[6]

Finally, because we determine that we cannot retroactively revise *Duran Gonzales II* to have only prospective application, we need not determine whether we would limit *Duran Gonzales II* to prospective application if we could. We note, however, that the situation in *Nunez-Reyes* is distinct from that presented in this appeal. In *Nunez-Reyes*, the petitioner and others similarly situated waived constitutional rights in reliance on our prior opinion. We stressed that it "would be manifestly unfair effectively to hoodwink aliens into waiving their constitutional rights on the promise of no legal consequences and, then, to hold retroactively that their convictions actually carried with them the particularly severe penalty of removal." *Nunez-Reyes*, 646 F.3d at 694 (internal quotation marks omitted). Here, the Plaintiffs, in relying on *Perez-Gonzalez,* did not waive any constitutional right, although they did disclose to the government their illegal presence within the country. Whatever weight might be given to such reliance, it is considerably less than that given to the waiver of a constitutional right.[7]

---

[6]This determination also governs Plaintiffs' motions to file an amended complaint and to amend their class certification because neither amendment could overcome or circumvent the legal determinations in *Duran Gonzales II.*

[7]The Supreme Court's opinion in *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006), tends to undercut the weight accorded this reliance. The Court noted:

> it is the conduct of remaining in the country after entry that is the predicate action; the statute applies to stop an indefinitely continuing violation that the alien himself could end at any time by voluntarily leaving the country. It is therefore the alien's choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, that subjects him to the new and less generous legal regime, not a past act that he is helpless to undo up to the moment the Government finds him out.

*Id*. at 44.

**V**

**[8]** Plaintiffs' request for relief from the retroactive application of *Duran Gonzales II* to their applications for adjustment of status must be denied because: (1) *Duran Gonzales II* itself applied its rulings to the Plaintiffs, thus giving the opinion retroactive application; and (2) another three-judge panel has reaffirmed that *Duran Gonzales II* has retroactive application. *Morales-Izquierdo*, 600 F.3d at 1092. The district court properly determined that *Duran Gonzales II* applies retroactively and that, accordingly, Plaintiffs are "ineligible to receive I-212 waivers." *Duran Gonzales II*, 508 F.3d at 1242. The district court's orders denying Plaintiffs' motions to amend class certification and to file an amended complaint, and dismissing this action, are **AFFIRMED**.